UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEMENTE M. GAMBOA, JR., <br><br> Plaintiff, <br><br> v. <br><br> B. GONZALES, et al., <br><br> Defendants. | Case No. 1:21-cv-00079-EPG (PC) <br><br> FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANT GONZALES AND DOE DEFENDANT(S), AND THAT ALL OTHER CLAIMS BE DISMISSED <br><br> (ECF No. 21) <br><br> OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS <br><br> ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

Clemente Gamboa, Jr. ("Plaintiff"), is a prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on December 11, 2020. (ECF No. 1). On January 20, 2021, the case was transferred to the United States District Court for the Eastern District of California.

On January 27, 2021, the Court screened Plaintiff's complaint. (ECF No. 14). The Court found that "Plaintiff's claim against defendant Gonzales for excessive force in violation of the Eighth Amendment should proceed past screening. The Court also [found] that all of

1

Plaintiff's other claims should be dismissed." (Id. at 6). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his claim against defendant Gonzales for excessive force in violation of the Eighth Amendment; or c. Notify the Court in writing that he wants to stand on his complaint." (Id. at 7).

Plaintiff failed to respond to the Court's screening order, so on March 19, 2021, the Court directed Plaintiff to respond within twenty-one days. (ECF No. 18). On March 29, 2021, Plaintiff filed his First Amended Complaint (ECF No. 19). The Court reviewed Plaintiff's First Amended Complaint and found that Plaintiff failed to state any cognizable claims. (ECF No. 20). The Court gave Plaintiff thirty days to either "a. Notify the Court in writing that he wants to stand on his First Amended Complaint; or b. Notify the Court in writing that he wants to withdraw his First Amended Complaint and proceed on his original complaint." (Id. at 11).

On May 10, 2021, Plaintiff filed two letters and a Second Amended Complaint. (ECF No. 21). It is not clear to what extent the letters are part of the Second Amended Complaint, but in any event, Plaintiff did not properly respond to this Court's second screening order or ask for leave to amend.[1]

As there are at least some additional relevant factual allegations in Plaintiff's most recent filing, the Court will screen it. However, the Court warns Plaintiff that failure to follow Court orders may result in sanctions, up to and including dismissal of this action.

For the reasons that follow, the Court will recommend that this action proceed on Plaintiff's Eighth Amendment excessive force claim against defendant Gonzales and Doe Defendant(s),[2] and that all other claims be dismissed.

---

[1] In one of his letters, Plaintiff appears to request discovery. The Court notes that discovery is not yet opened. If this case proceeds, the Court will issue an order opening discovery in due course.

[2] Plaintiff is advised that Doe Defendant(s) cannot be served until Plaintiff has identified them and amended his complaint to substitute the named defendants in place of Doe Defendant(s). For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendants to be served. Plaintiff will be required to identify Doe Defendant(s) as the litigation proceeds. The Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify Doe Defendant(s).

Plaintiff has fourteen days from the date of service of these findings and recommendations to file his objections.

### I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 13), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

## II. SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

At times Plaintiff's complaint is difficult to understand. What follows is the Court's best understanding of Plaintiff's allegations.

On May 11, 2020, while in Wasco State Prison, Plaintiff was let out of his cell for an assigned phone call by defendant Pasquel, who was a tower guard.

While Plaintiff awaited a global tel link connection, Plaintiff observed defendant Gonzales sitting outside his office. Plaintiff watched defendant Gonzales walk toward him. Defendant Gonzales then ordered Plaintiff to get off the phone.

Before Plaintiff could respond, defendant Gonzales made an offensive move with his right elbow into Plaintiff's neck, while coming within inches of Plaintiff's face. He said, "Do you have a fucken problem with that?" Defendant Gonzales never allowed Plaintiff to obey orders but began striking Plaintiff numerous times in the right temple until Plaintiff collapsed.

Responding defendants began punching and kicking Plaintiff while he was on the ground. Plaintiff vaguely remembers being handcuffed after being stepped on and beaten. Plaintiff was placed on a bench while handcuffed, only to fall and hit his head, causing him to black out.

"Plaintiff recalls awakening being roughly thrown into wheel chair [sic] being strapped in with mobility vest and roled [sic] out of building past medical personal who watched Plaintiff being rolled past into examining room were urinating on self because of unable to respond to probing from nurse and smelling salt waiting until transported to Ad-Seg unable to respond to defendant of psychology refusing medical treatment from being unconcious [sic]." Plaintiff vaguely remembers that it was Defendants who placed him in the wheelchair.

Plaintiff was denied medical attention. Plaintiff remembers being pushed past medical staff and nurses, who were not allowed to check Plaintiff's condition. Additionally, the attending nurse's course of treatment was medically unacceptable and caused Plaintiff not to complain after the cruel and sadistic treatment inflicted by Defendants because of a fear of dying or further persecution from Defendants.

Plaintiff suffered from that point forward memory loss and mental stress from fear of

retaliation. He is now afraid to be close to correctional staff.

Plaintiff also alleges that he was denied due process in a disciplinary action from Valley State Prison. Plaintiff received a Rules Violation Report, he was not allowed to call witnesses at the hearing, and "Plaintiff was assised [sic] 90 days quarterly package." The district attorney refused to file criminal charges because of the lack of evidence.

Plaintiff also alleges that Defendants conspired against him to get him to drop the grievance procedure, or he would be killed or beaten up. Plaintiff was "[m]entally stressed of being killed by parole agents while monitoring Plaintiff." Plaintiff grew very concerned with death threats made by Defendants, who were concerned with their unlawful behavior.

Plaintiff was concerned with a man following him whom he later identified as Agent J. Castillo.

Plaintiff also alleges that there was a conspiracy to falsify legal documents. According to defendant Gonzales's written testimony on a Rules Violation Report, Plaintiff yelled at defendant Gonzales, then lunged at him in an attempt to strike him. Defendant Gonzales also wrote that he used Plaintiff's momentum to place Plaintiff against a wall and ordered Plaintiff to a prone position, while defendant Pasquel pushed a button opening the "cellie port" for responding staff who assisted defendant Gonzales in handcuffing Plaintiff. Defendant Pasquel's report "reads similar" to defendant Gonzales's.

In his first letter, Plaintiff alleges that he is facing persecution from the psychology department at the Robert Presley Detention Center. Plaintiff is not a willing participant in the mental health program.

In his second letter, Plaintiff quotes the Bible. He also explains at least some of his arrest history. He also includes allegations regarding events that occurred at the Robert Presley Detention Center. Plaintiff alleges that he was assaulted by defendant Hodges. Plaintiff also alleges that he found it difficult being housed upstairs and being assigned to a top bunk (Plaintiff has a lower bunk chrono). Plaintiff also alleges that Plaintiff's cellmate told deputies he was going beat Plaintiff and then attacked Plaintiff. Plaintiff also alleges that "defendants" ordered Plaintiff back into the cell after Plaintiff was attacked. Later, "defendants" woke

5

Plaintiff up by kicking him.

### III. ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City

of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B. Federal Rules of Civil Procedure 18 and 20**

A complaint must comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). "The controlling

7

principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." K'napp v. California Dept. of Corrections, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013), aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation, 599 Fed. App'x. 791 (9th Cir. 2015) (alteration in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) ("Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim.").

"Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." Washington v. Fresno County Sheriff, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); Williams v. Madera Police Dep't, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); Miller v. Kernan, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); Solomon v. Carrasco, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same).

In the letters that Plaintiff filed with his Second Amended Complaint, Plaintiff is attempting to add at least some claims based on incidents that occurred at the Robert Presley

Detention Center. However, Plaintiff failed to comply with Federal Rule of Civil Procedure 20 because there appears to be no factual connection between these claims and the claims based on incidents that occurred at Wasco State Prison.[3] The defendants are different and the incidents occurred at different institutions.

Accordingly, Plaintiff's claims based on incidents that occurred at the Robert Presley Detention Center should not proceed in this action.

The Court sees no prejudice to Plaintiff if these claims are dismissed from this action, without prejudice. This case is still at the screening stage. Additionally, as Plaintiff was transferred to the Robert Presley Detention Center on or around March 12, 2021 (ECF No. 17), and as Plaintiff just added these claims, it appears that they arose recently and there are no statute of limitations issues. The Court notes that Plaintiff can file separate action(s) based on the incidents that occurred at the Robert Presley Detention Center.

Accordingly, the Court will recommend that the claims based on the incidents that occurred at the Robert Presley Detention Center be dismissed without prejudice.

### C. Excessive Force in Violation of the Eighth Amendment

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of

---

[3] Plaintiff might be attempting to connect some of the incidents by alleging a conspiracy claim. To the extent that he is, as analyzed below, Plaintiff has failed to state a conspiracy claim.

9

physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Plaintiff alleges that, after giving an order but not giving Plaintiff time to comply, defendant Gonzales struck Plaintiff multiple times, until Plaintiff collapsed. Based on the allegations in the Second Amended Complaint, the Court will recommend that Plaintiff's excessive force claim against defendant Gonzales proceed past screening.

Plaintiff also alleges that "[r]esponding defendants" began punching and kicking him while he was on the ground. The Court finds that the claim based on these allegations should proceed past screening. However, Plaintiff does not identify which defendants were involved, there are no allegations suggesting that any defendant other than Gonzales was involved, and Plaintiff is clearly not referring to all defendants (at least some of the defendants did not even work at Wasco State Prison). Accordingly, the Court will recommend that Plaintiff's Eighth Amendment excessive force claim against Doe Defendant(s) based on the allegations that they punched and kicked him while he was on the ground proceed past screening.

As there are no allegations linking any other defendant to the alleged excessive force incident, the Court will recommend that Plaintiff's Eighth Amendment excessive force claim against defendant Gonzales and Doe Defendant(s) proceed past screening and that his excessive force claim against all other Wasco State Prison defendants be dismissed with prejudice.

### D. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

10

indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff appears to be bringing a medical care claim based on the allegations that he was not given treatment after he was assaulted and after he fell off a bench. However, Plaintiff failed to sufficiently allege that any defendant knew that Plaintiff had a serious medical need yet disregarded that need. There are also no allegations suggesting that any defendant intentionally prevented Plaintiff from receiving necessary medical care. Plaintiff failed to link any particular defendant to the alleged violation, and instead just states that "defendants" were

11

responsible.

Moreover, based on Plaintiff's allegations, he was seen by medical staff. Plaintiff states that he was pushed past nurses who were not allowed to check his condition, but he also alleges that he was brought into an examining room and was seen by a nurse. Plaintiff apparently did not like the care the nurse provided, but Plaintiff was seen by medical staff after he was allegedly assaulted and after he fell off a bench. Thus, based on Plaintiff's allegations, there is no indication that any defendant knew that Plaintiff had a serious medical need yet disregarded that need or that any defendant intentionally prevented Plaintiff from receiving necessary medical care.

As to Plaintiff's complaints against the nurse, the nurse is not named as a defendant in this action. Moreover, Plaintiff's legal conclusion that the care the nurse provided was medically unacceptable is insufficient, and there are no factual allegations supporting this legal conclusion.

Accordingly, Plaintiff has failed to state a claim for deliberate indifference to his serious medical needs against any defendant at Wasco State Prison, and the Court will recommend that Plaintiff's claim for deliberate indifference to his serious medical needs against the defendants at Wasco State Prison be dismissed with prejudice.

### E. False Rules Violation Report

The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. See Muhammad v. Rubia, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted); Harper v. Costa, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), aff'd, 393 Fed. App'x 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California … have determined that a prisoner's allegation that prison

officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right; and (2) when the prisoner alleges that he was not afforded procedural due process in a disciplinary proceeding concerning the false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").

As to the first way, a prisoner may state a section 1983 claim for a violation of his First Amendment rights due to retaliation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

As to the second way, the Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. Ingraham v. Wright, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that

resulted in a punishment of thirty days in solitary confinement, held that while States may create liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). In Sandin the Supreme Court held that neither thirty days in solitary confinement nor issuance of an RVR that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections.

Plaintiff alleges that defendant Gonzales issued a false Rules Violation Report, which other defendants supported. As described above, merely filing a false Rules Violation Report does not violate Plaintiff's constitutional rights.

Additionally, Plaintiff failed to sufficiently allege that the Rules Violation Report was issued because Plaintiff engaged in protected conduct. There are no allegations regarding what any defendant said or did that would suggest that any defendant issued (or supported) the false Rules Violation Report because Plaintiff engaged in protected conduct. Accordingly, Plaintiff failed to sufficiently allege that the Rules Violation Report was issued in retaliation for his exercise of a constitutional right.

As to Plaintiff's procedural due process claim, it fails because Plaintiff does not sufficiently allege that he was deprived of a liberty interest. As discussed above, Plaintiff is only entitled to procedural due process at a disciplinary hearing if he was deprived of a liberty interest, and liberty interests are generally only created if an inmate was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life. Here, the only punishment Plaintiff suffered was the loss of "90 days quarterly package," and Plaintiff does not sufficiently allege how this loss subjected him to an atypical and significant hardship in relation to the ordinary incidents of prison life.

Moreover, Plaintiff alleges that he was denied due process in a disciplinary action at Valley State Prison, but does not sue any defendants from Valley State Prison. There are no allegations suggesting that any defendant was responsible for the alleged denial of procedural due process.

Accordingly, Plaintiff has failed to state a claim based on the allegedly false RVR against any defendant at Wasco State Prison, and the Court will recommend that Plaintiff's claims against the defendants at Wasco State Prison based on the allegedly false RVR be dismissed with prejudice.

### F. Conspiracy

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974). "[M]ore than vague conclusory allegations are required to state a [conspiracy] claim." Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

Plaintiff appears to allege two separate conspiracies. First, Plaintiff alleges that Defendants conspired to get him to drop his grievance. Second, Plaintiff alleges that Defendants conspired to fabricate a Rules Violation Report (and/or supporting documents).

As to Plaintiff's claim that Defendants conspired to get him to drop his grievance,

\\\
\\\

15

Plaintiff alleges that "defendants" threatened him,[4] but there are no factual allegations suggesting that any defendant had an agreement or a meeting of the minds with any other defendant to try to get Plaintiff to drop his grievance. At most, Plaintiff includes vague conclusory allegations.

As to Plaintiff's conspiracy claim based on the allegedly false Rules Violation Report, even if there was a meeting of the minds between any defendants to fabricate a Rules Violation Report, Plaintiff failed to sufficiently allege that any defendant conspired to violate his constitutional rights. As discussed above, even if certain defendants did fabricate the Rules Violation Report (and/or supporting documents), based on Plaintiff's allegations, this did not violate Plaintiff's constitutional rights.

Accordingly, Plaintiff failed to state a conspiracy claim against any defendant at Wasco State Prison, and the Court will recommend that Plaintiff's conspiracy claims against the defendants at Wasco State Prison be dismissed with prejudice.

**IV.     CONCLUSION AND RECOMMENDATIONS**

The Court has screened the Second Amended Complaint and finds that Plaintiff's Eighth Amendment excessive force claim against defendant Gonzales and Doe Defendant(s) should proceed past screening. The Court also finds that all other claims should be dismissed.

The undersigned will not recommend that further leave to amend be granted. Twice before the Court has screened Plaintiff's complaint, explained to Plaintiff the deficiencies in his complaint, and provided Plaintiff with applicable legal standards. (ECF Nos. 14 & 20). However, Plaintiff did not cure the deficiencies identified by the Court. Accordingly, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment excessive force claim against defendant Gonzales and Doe Defendant(s);
2. All other claims based on incidents that occurred at Wasco State Prison be

---

[4] Plaintiff does not include allegations regarding which defendants threatened him, when he was threatened, or what each defendant actually said.

dismissed with prejudice; and

3. All claims based on incidents that occurred at the Robert Presley Detention Center be dismissed without prejudice.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **June 4, 2021**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE